1

2

3

4

5  UNITED STATES DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
6  AT SEATTLE

7  MARILYN C.,

8                          Plaintiff,          CASE NO. C18-5469-MAT

9          v.

10 NANCY A. BERRYHILL, Deputy               ORDER  RE: SOCIAL SECURITY
   Commissioner of Social Security for      DISABILITY APPEAL
11 Operations,

12
                         Defendant.
13

14        Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

15 the Social Security Administration (Commissioner).    The Commissioner denied plaintiff's

16 application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law

17 Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all

18 memoranda of record, this matter is AFFIRMED.

19                        **FACTS AND PROCEDURAL HISTORY**

20        Plaintiff was born on XXXX, 1951.[1]  She completed high school and a year of college, and

21 previously worked as a retail store manager, district manager, room service clerk, retail sales clerk,

22 and jewelry store manager.  (AR 34, 196.)

23
   ───────────────────
          [1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

   ORDER
   PAGE - 1

Plaintiff protectively filed a DIB application on March 9, 2015, alleging disability beginning October 29, 2013. (AR 180.) Her application was denied at the initial level and on reconsideration.

On October 20, 2016, ALJ Allen Erickson held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 36-91.) On January 12, 2017, the ALJ issued a decision finding plaintiff not disabled. (AR 24-35.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on April 17, 2018 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's status post cerebrovascular accidents; status post myocardial infarctions; and coronary artery disease severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform

light work, subject to the following limitations: cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, crawl, and balance; can tolerate occasional exposure to vibration, temperature, and humidity extremes, and concentrated levels of dust, fumes, gases, and other pulmonary irritants; and can understand, remember, and carry out detailed, but not complex instructions. With that assessment, and with consideration of the VE's testimony, the ALJ found plaintiff able to perform her past relevant work as a room service clerk, a sedentary job, both as actually and normally performed.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Finding plaintiff not disabled at step four, the ALJ did not proceed to step five.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing her symptom testimony and that the errors were not harmless given the impact on the RFC assessment. She does not specify the relief requested.

The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p.[2]

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence in the record. (AR 30.) Contrary to plaintiff's contention, the ALJ provided several specific, clear, and convincing reasons in support of that conclusion.

A.   Medical Evidence

While the ALJ may not reject subjective symptom testimony based solely on the absence of corroborating objective medical evidence, the medical evidence remains a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ therefore properly considers

---

[2] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 4

whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. § 404.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ here found plaintiff's statements concerning her symptoms "to affect the claimant's ability to work only to the extent they can be reasonably accepted as consistent with the objective medical and other evidence." (AR 30.) His discussion of the medical evidence, included, *inter alia*, the minimal objective findings following plaintiff's cardiovascular and cerebrovascular events prior to the alleged onset date, the relatively normal September 9, 2013 neurological evaluation, and a June 22, 2015 psychological evaluation in which plaintiff did not evidence any cognitive, memory, or mental health concerns. (AR 30-32.)

Plaintiff did not challenge the ALJ's consideration of this evidence in her opening brief. In reply, plaintiff states the phrase "objective medical evidence" does not appear in the decision, and that the ALJ could not rely, alone, on an absence of corroborating objective medical evidence to reject her symptom testimony. Because the ALJ explicitly stated he accepted plaintiff's testimony only to the extent consistent with the objective medical and other evidence, and because he also offered other reasons for his conclusion, plaintiff's arguments do not withstand scrutiny. The ALJ properly discounted plaintiff's symptom testimony based on its inconsistency with the medical evidence.

/ / /

B.  Activities

An ALJ may discount a claimant's testimony with consideration of activities inconsistent with the alleged degree of impairment. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]")  Previous ability to work with alleged symptoms is a relevant consideration. *See*, *e.g.*, *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) ("She was able to hold two previous jobs with a fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that she is qualified for thousands of less strenuous jobs.")

The ALJ found plaintiff's activities following her medical issues inconsistent with a finding of disability.  (AR 32.)  Her last stroke occurred in June 2013, she returned to work quickly after the incident, and continued to work until October 2013.  While plaintiff testified she had some assistance and was unsure whether she would have been able to perform the job without that support, the record did not contain information regarding the degree of support provided.  Plaintiff emphasized during a June 2015 evaluation "that she was fired for allegedly lying, and not for an inability to perform her job, which suggests that her supervisors or employees did not notice the alleged deficiencies."  (*Id.* (citing AR 429 (also noting plaintiff fought the termination and won damages in lieu of back pay pursuant to a settlement, and reported she was "not interested in attempting any other position other than 'management' and feels she 'can't run things as a manager anymore.'"))  The ALJ found this work activity to suggest plaintiff was not as physically or mentally limited as asserted, and indicated her ability to maintain a schedule and generally meet

the demands of work.

Plaintiff argues that, because she did not allege onset of disability until October 29, 2013, it is irrelevant whether she worked prior to that date. This argument is not persuasive. As the Commissioner observes, plaintiff claimed disability based primarily on issues stemming from her heart attack and strokes (*see, e.g.*, AR 195, 427), all of which occurred prior to her alleged onset date. The ALJ properly considered the fact plaintiff worked after those events and up until the month of her alleged onset date, and that she stopped working for reasons other than her disability, as evidence inconsistent with her allegations. The mere fact "plaintiff did not claim to be disabled until after she quit working" (Dkt. 10 at 2) does not render irrelevant her ability to work after the events giving rise to her disability claim.

The ALJ's decision also reflects consideration of plaintiff's other activities. Plaintiff, for example, testified she is generally independent in her activities of daily living, can drive and grocery shop independently, and walks regularly, while her sister-in-law attested plaintiff had no difficulty with personal care, could shop for groceries and personal care items, drive a car, play some board games, read, and watch television, attends church and movies regularly, and could walk about a mile. (AR 29-30.) In evaluations conducted in June 2015, plaintiff reported exercising frequently, including walking long distances on a treadmill daily and four miles around the waterfront at least twice a week, that she was a voracious reader, and had an active lifestyle. (AR 31-32.) The ALJ properly discounted plaintiff's symptom testimony in light of the evidence of her activities.

C.    Treatment

An ALJ properly considers evidence associated with a claimant's treatment. 20 C.F.R. § 416.929(c)(3), SSR 96-7p and SSR 16-3p. The ALJ here found plaintiff's lack of treatment

supporting a finding her limitations were not as severe as alleged. (AR 32.) Plaintiff had not participated in physical or occupational therapy. The ALJ considered factors associated with this lack of treatment. At hearing, plaintiff testified she did not have insurance until 2014, but treatment notes indicated she was insured by Hawaii Medical Services Association. (AR 377-84 (October-November 2013 treatment notes).) Treatment notes from her January 2013 hospital stay indicate she had no physical therapy needs and no indication for occupational therapy services. (AR 362, 364.) After the June 2013 stroke, her speech improved after therapy. (AR 297 (also noting problem with recall and sometimes saying the wrong words was "very mild.")) Even after her insurance reinstatement in 2014, plaintiff did not discuss the option of therapies for her limitations. "This lack of treatment, even once the claimant reinstated insurance, suggests her impairments are not as limiting as she asserts." (AR 32.)

Plaintiff argues the lack of physical or occupational therapy evidences a lack of need, not a lack of participation, and that the ALJ inconsistently relied on evidence she did participate in speech therapy. She maintains she engaged in the appropriate, recommended treatment by following her anticoagulant therapy since the June 2013 stroke. She further asserts that, given the fact her neurologist did not recommend occupational or physical therapy in September 2013, her failure to inquire about such therapy does not negatively impact her symptom testimony.

The Court finds no reversible error. The ALJ's decision is reasonably read as considering not only absent treatment, but also the minimal amount of treatment and the conservative nature of the treatment prescribed and received as inconsistent with plaintiff's allegations as to the degree of her limitations. He considered not only the fact plaintiff had not received physical or occupational therapy following the incidents giving rise to her disability claim, but also that such treatment was not necessary. He considered that the therapy plaintiff did receive, for her speech,

improved her condition. These considerations were appropriate and the ALJ's interpretation of the evidence was rational. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (favorable response to conservative treatment undermines reports of disabling nature of pain); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). The ALJ also properly considered, as a part of this analysis, that the absent, minimal, and conservative treatment was not attributable to a lack of insurance or some other factor. SSR 16-3p ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints.")

Finally, while the ALJ utilized only the phrase "lack of treatment," rather than identifying the treatment as minimal and/or conservative, the word choice does not alone undermine the substantial evidence support for the ALJ's conclusion. "As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. "Even when an agency 'explains its decision with "less than ideal clarity,"' we must uphold it 'if the agency's path may reasonably be discerned.'" *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quoted sources omitted). *See also Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987) ("An arguable deficiency in opinion-writing technique is not a

sufficient reason for setting aside an administrative finding where, as here, the deficiency probably had no practical effect on the outcome of the case.") Because the language used cannot be said to have altered the outcome of this case, any error is properly deemed harmless. *Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'")

D.     Hearing Observations

The ALJ stated: "The undersigned further notes the claimant did present with some word finding difficulty during the hearing; however, this did not prevent the claimant from providing answers to questions, and was not overly distracting." (AR 32.) The Commissioner argues the ALJ, in so doing, properly relied on his personal observations at hearing as a basis for discounting plaintiff's testimony. *See, e.g., Thomas*, 278 F.3d at 960 (ALJ properly considered claimant's "demeanor" at hearing and found "'she seemed to engage in considerable histrionic exaggeration.'") Plaintiff avers the ALJ included the observation for a different purpose, as well as that the Ninth Circuit disapproves of such a rationale. *See Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible.")

An ALJ may not employ a "'sit and squirm'" test and reject a claimant's symptom testimony based solely on the failure to exhibit alleged symptoms at hearing. *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). However, the inclusion of an ALJ's observations does not render the decision improper. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999). Personal observations may be included as part of the overall evaluation, *Orn*, 495 F.3d at 639-40, but should not be "used as a

substitute for medical diagnosis." *Marcia v. Sullivan*, 900 F.2d 172, 177, n.6 (9th Cir. 1990) (cited sources omitted). *See, e.g.*, *Verduzco*, 188 F.3d at 1090 (claimant exhibited symptoms inconsistent with both the medical evidence and other behavior at hearing); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 & n.8 (9th Cir. 1989) (claimant was "overdramatizing" alleged pain by "dishonestly attempting to display too *much* pain.").

As plaintiff asserts, it is not entirely clear the ALJ included the observation as a reason for discounting symptom testimony. He included the observation in the context of discussing the differences in plaintiff's presentation to two different examining doctors, and the consistency of her minimal difficulties in one examination with her "earlier reports that her word finding difficulties happened only 'now and then' and were 'minor' and providers descriptions of her symptoms as mild." (AR 32 (citing AR 297 (abnormality mild), 371-72 ("At this point, she still notices these minor speech things now and again. She has returned to work."))  He had noted plaintiff's testimony that "when she does not have any external pressures and was able to do things by rote she is generally fine[,]" and that the testing in the examination in which plaintiff evidenced minimal, if any, difficulties with her speech[3] would "have been out of the ordinary and caused stress to the claimant." (AR 32.)  After describing his own observation, the ALJ stated: "Thus, the overall evidence supports some limitation in this regard, but does not support limitations beyond those in the above [RFC]." (*Id.*)

Considering the decision and record as a whole, the Court does not find the inclusion of

---

[3] (*See* AR 429 ("She kept trying to report that she was having 'word finding difficulty,' but it was noted that she had an excellent vocabulary and was very articulate in her communication skills. On occasion, she had to think for a few seconds about a word that she wanted to use, but then was able to come up with the word she wanted. Additionally, she claimed that she had trouble 'understanding words,' but at no time during the multi-hour evaluation process did she ever use words that were not appropriate in sentences, nor did she ever have to inquire as to what I meant by certain words. She was able to easily understand simple and complex task instructions, as well as multi-layered questions and multi-component tasks. She was able to use her cell phone to research and retrieve information."))

the ALJ's personal observation to render the decision improper.  Nor does the Court find consideration of this observation necessary to uphold the ALJ's conclusion.  That is, even finding its inclusion improper or unrelated to the symptom testimony assessment, the three above-described specific, clear, and convincing reasons provide substantial evidence support for the ALJ's conclusion.  *See Carmickle*, 533 F.3d at 1162-63 (where ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, error in assessment may be deemed harmless; the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error.")  In addition, having found no reversible error in the ALJ's assessment, plaintiff's assertion of related error in the RFC assessment also fails.  *See Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ need not include in RFC properly discounted claimant testimony), and *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (mere restating of argument does not identify error).

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>19th</u> day of February, 2019.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 12